# Gillman *v.* Media, Middletown, Aston & Chester Electric Railway Company, Appellant.

*Evidence—Witnesses—Expert—Hypothetical question.*

1. Where the facts are admitted or proved by evidence which is not conflicting, an expert may be interrogated as to his opinion upon such facts. As, however, it is the province of the jury to determine the facts, an expert cannot be asked his opinion upon the whole evidence in the case where that is conflicting. But a party may state specifically the particular facts he believes to be shown by evidence or such facts as the jury would be warranted in finding from the evidence, and ask the opinion of the expert on such facts, assuming them to be true. The other side may likewise put a hypothetical question based upon such facts as he alleges are shown by the evidence or the jury would be justified in finding from the evidence. Neither side is required in putting the hypothetical question to include therein any other facts than those which he may reasonably deem established by the evidence.

2. Where a hypothetical question states all of the facts disclosed by

the evidence in the case, from the standpoint of the party interrogating the witness, the question states all that is required.

*Practice—Trial—Continuance cause—Absence of witness—Discretion of court.*

3. It is not an abuse of discretion amounting to reversible error for a trial judge to refuse to continue a case because of the absence of a witness where there is no proof that the witness had been subpœnaed, where there is no offer to show what he would testify to, and where it also appears that the testimony of the witness would have been simply cumulative.

Submitted March 2, 1909. Appeal, No. 95, Jan. T., 1908, by defendant, from judgment C. P. Delaware Co., Jan. T., 1906, No. 185, on verdict for plaintiff in case of Bertha Gillman v. Media, Middletown, Aston & Chester Electric Railway Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.

At the trial when Dr. Paxson was on the stand he was asked the following question:

"Q. If Bertha Gillman, prior to June 9, 1906, was in good physical health, and on that day received an injury on a trolley car which fractured her coccyx, and has since that time been operated upon for that fracture, and is in poor physical health now, and has been since that time, might, in your judgment, that injury cause her present poor physical health?"

Mr. Howell: I object to that question. I presume it is intended to be a hypothetical question. It does not state all of the facts of the case, and I think it is improper.

The Court: I do not think a hypothetical question must necessarily state all of the conditions. There may be thousands of conditions not stated.

Mr. Howell: Yes, sir. That is the point, and to ask whether, applying it to this woman, a certain thing itself were anything else, when there are other complications admitted, it permits the drawing of a wrong inference.

The Court: What other complications?

Mr. Howell: Dysmenorrhea, painful menstruation, previous history of an operation and the removal of ovaries.

The Court: State your proposition again.

Question read as follows:

"Q. If Bertha Gillman, prior to June 9, 1906, was in good physical health, and on that day received an injury on a trolley car which fractured her coccyx, and has since that time been operated upon for that fracture, and is in poor physical health now, and has been since that time, might, in your judgment, that injury cause her present poor physical health? A. Yes, sir."

The Court: I think you had better add to that, there being no other physical conditions excepting those mentioned, because that excludes everything else, you see.

Mr. Fronefield: I have no objection to that.

The Court: Add that to it, and I will let it be answered.

Mr. Howell: Your honor understands that is the very point of my objection?

The Court: I say, there being no other physical conditions.

Mr. Howell: The testimony is there were others.

The Court: I do not know whether there are or not. You can cross-examine on that. The objection is overruled. Exception. [1]

Mr. Fronefield: "Q. Will you please answer the question? A. My answer is that I only examined the woman one day, and never have seen her since except in the courtroom, and what I found at that time I believe to be the cause of all her trouble then. As to now, I know nothing about."

Dr. Charles S. Potts, a witness for the plaintiff, was asked this question:

Mr. Fronefield: "Q. From your examination of Bertha Gillman, after having received a full history of her case, what, in your judgment is the least time required and the least expense required to give her the rest cure of which you have spoken?"

Mr. Howell: I object.

The Court: If it is divided up, I will let him state the least time and rule the other out.

Mr. Fronefield: I will make the question refer to the least time required.

Mr. Howell: I object to that question.

The Court: The doctor may give his judgment as to the probable time in which she will get well with proper treatment.

Mr. Howell: My objection is the doctor does not know the entire history of the case.

The Court: I take it for granted if he has not sufficient knowledge to enable him to state it he won't state it. If he has no such knowledge as will enable him to give an opinion upon that, I take it for granted he won't give it.

Mr. Howell: He said a year.

"A. I probably said a year."

Mr. Fronefield: "Q. What is your answer to that question, the least time?"

The Court: You may state whether in your judgment she would be restored in a year; exception. [2]

"A. If you give me the least time, I would say six months, although I would not promise it in that time."

Dr. Charles S. Potts, a witness for the plaintiff, was asked this question:

"Q. Doctor, in your judgment, could Miss Gillman's condition be caused by the accident of being hurt on a trolley car, such as has been detailed in your presence here. A. Yes, sir. Undoubtedly so."

Mr. Howell: I object.

Objection overruled. [3]

Mr. Howell: I formally ask an adjournment until to-morrow to permit the obtaining of the presence of the two physicians who are prevented from coming on account of important cases of illness that they cannot leave.

Mr. Fronefield: Who are the physicians?

Mr. Howell: Dr. S. R. Crothers and Dr. Joseph Manasses.

Mr. Fronefield: I object to the continuance.

The Court: Objection sustained. [4]

Mr. Howell: I then would formally ask for a continuance of this case on account of the absence of a material witness who

has been subpœnaed to be here. He has been in attendance, but as he is a physician was compelled to absent himself in attendance of an ill patient—the witness is Dr. S. R. Crothers. I ask for a general continuance to the next term of court.

Mr. Fronefield: That is also objected to for the same reason and because Dr. Crothers simply is called as an expert to give us his opinion as to the illness of the plaintiff, it appearing that the doctor was present, representing the defendant company, at the operation in 1906.

The Court: Objection sustained. [5]

The court charged the jury in part as follows:

[The testimony read this morning of Dr. Manasses says that she was nervous and neurasthenic, both, if there is any difference in them what they are, prior to June, 1904, and the contention of the defendant is that what she is suffering from now is but a continuation of her old trouble and that there was nothing took place on this car on June 9, 1906, that brought about the trouble or increased it, because it is quite apparent that if it was brought about by the shock given to her by being thrown against the car and the company was negligent and she was not, then she would be entitled to recover and if that was the primary cause of the trouble, and she would also be entitled to recover if that happened if it increased her former difficulties or trouble. There has been some testimony about whether that would tend to increase the former trouble, if it had existed. You will remember it. It is all a question for you entirely. No law about it except the law the court has laid down.] [6]

[Now, she will be entitled to recover if you find she was not negligent, find that the company was, and find that the cause of her trouble arose out of the shock which she says she received there, or her trouble increased by reason of what took place there. Then what will compensate her? She will be entitled to be compensated for her pain and suffering, whatever that has been in the past and will likely be in the future. It is a very difficult thing to tell, but you will have to take up that question and dispose of it. She will

also be entitled to be compensated for her loss of earning power.] [7]

Defendant presented these points:

4. If the jury believe that the plaintiff got on the car while it was standing still and that the car was started in the usual and ordinary way after the plaintiff was in the car, but before she had an opportunity to seat herself, there can be no recovery in this case, and your verdict must be for the defendant. *Answer:* We would affirm that unless the car was started hastily, recklessly, power turned on so that it would start suddenly, because it would be negligent for a motorman or a conductor, where they had charge of the moving of a car to start it so suddenly and recklessly as to throw persons down who were in the aisle seeking seat. That is affirmed as a general proposition. [8]

11. The burden is on the plaintiff to convince the jury that any pain and suffering she may have endured was caused by an injury at the defendant's hands, and from no other cause. Unless she has done so, your verdict must be for the defendant. *Answer:* That is refused. If it means that all her troubles must have arisen out of the accident. In other words, if the condition she says she is in now was an old and previous condition and this accident happening was not the cause of that condition, but it increased it, still she may recover. Therefore this point is refused. [9]

17. Under all the evidence in this case, the verdict must be for the defendant. *Answer:* That is refused. It will be for you. [10]

Verdict and judgment for plaintiff for $3,950. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (4, 5) refusal of continuance; (6–10) above instructions, quoting them.

*E. A. Howell* and *David Wallerstein,* for appellant.—It was error to submit the case to the jury: Bornscheuer v. Traction Co., 198 Pa. 332.

Where a hypothetical question is asked in an issue being tried before the court without a jury, this court has decided that the hypothetical question must include all essential conditions and facts brought out in the testimony of the party to the suit, whose counsel asks the question: Keating's Appeal, 2 Monaghan, 4; Miller's Est., 179 Pa. 645; Reber v. Herring, 115 Pa. 599.

It was the duty of the court to instruct the jury that if her condition was the result of cumulative causes, it was the duty of the jury in estimating the damages to be awarded to Miss Gillman to separate the injury resulting from conditions prior to the accident and those resulting from the accident. There is apparently no case upon this point in the state of Pennsylvania, but it has been discussed and decided in the state of Michigan in Hall v. Cadillac, 114 Michigan, 99 (72 N. W. Repr. 33); Schwingschlegl v. Monroe City, 113 Michigan, 683 (72 N. W. Repr. 7).

*W. Roger Fronefield* and *J. Howard Reber*, for appellee.— The case was for the jury: Kohler v. Penna. R. R. Co., 135 Pa. 346; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233.

The jury is enabled to determine by the mere form of the question, what specific facts are assumed by the expert in his conclusions and of what his opinions are predicated: Coyle v. Com., 104 Pa. 117; Yardley v. Cuthbertson, 108 Pa. 395.

Dr. Potts heard all the testimony in the case except part of the plaintiff's, and her condition was detailed to him fully. His opinion may properly be based upon facts testified to at the time: Olmsted v. Gere, 100 Pa. 127.

The charge as a whole was a clear statement of the law applied to the disputed facts: Pierce v. Cloud, 42 Pa. 102.

OPINION BY MR. JUSTICE MESTREZAT, March 29, 1909:

Notwithstanding the thirteen assignments filed in this case we are not convinced that the learned court below committed error on the trial of the cause.

The assignments alleging error in the admission of expert testimony are without merit. Where the facts are admitted

or proved by evidence which is not conflicting, an expert may be asked his opinion upon such facts. As, however, it is the province of the jury to determine the facts, an expert cannot be asked his opinion upon the whole evidence in the case where that is conflicting. But a party may state specifically the particular facts he believes to be shown by evidence or such facts as the jury would be warranted in finding from the evidence, and ask the opinion of the expert on such facts, assuming them to be true. The other side may likewise put a hypothetical question based upon such facts as he alleges are shown by the evidence or the jury would be justified in finding from the evidence. Neither side is required in putting the hypothetical question to include therein any other facts than those which he may reasonably deem established by the evidence. The purpose of a hypothetical question is to elicit from the expert an opinion upon facts either admitted or established by the evidence, and the facts upon which the question is predicated should be clearly stated so that the jury may know upon what the opinion is based.

The objection to the question put to the expert witness was "that it does not state all of the facts of the case." It, however, did state all of the facts disclosed by the evidence in the case from the standpoint of the party interrogating the witness, and that was all that is required: Coyle v. Com., 104 Pa. 117; Davidson v. State, 135 Ind. 254; Cowley v. People, 83 N. Y. 464; Stearns v. Field, 90 N. Y. 640. In the Coyle case, Mr. Justice CLARK, speaking for the court, said (p. 133): "Each side had the right to an opinion from the witness upon any hypothesis reasonably consistent with the evidence, and if meagerly presented in the examination on one side, it may be fully presented on the other; the whole examination being within the control of the court, whose duty it is to see that it is fairly and reasonably conducted." COFFEY, J., delivering the opinion in the Davidson case, says (p. 261): "In the examination of expert witnesses, counsel may embrace in his hypothetical question such facts as he may deem established by the evidence, and if opposing counsel does not think all the facts established are included in such question he may include

them in questions propounded on cross-examination. Any other course would result in endless wrangles over the question as to what facts were, and what were not, established." In Stearns v. Field it is held that if "testimony of an expert is proper, counsel may ask a hypothetical question, assuming the existence of any state of facts which the evidence fairly tends to justify. An error in the assumption does not make the interrogatory objectionable, if it is within the possible or probable range of the evidence."

It may be suggested that the admission of the testimony of Dr. Paxson which is assigned for error, did the defendant no harm if it was erroneously admitted. His reply was not a direct answer to the question. The hypothetical question put to the doctor invited his opinion whether the injury on the trolley car was the cause of the plaintiff's "present poor physical health." In his answer he says that he examined the woman, "and what I found at that time I believe to be the cause of all her trouble then." He does not say what he found and, hence, he does not testify as to the cause of her present condition of health. His answer to the hypothetical question does not disclose that it is based upon the injury which she alleges she received on the trolley car.

Dr. Potts, whose testimoney is also objected to, had made an examination of the plaintiff and testified as to the result of the examination. He also was present at the trial and heard all the testimony in the case except a part of the plaintiff's testimony. The trial judge interrogated the witness and stated to him the facts disclosed by the evidence. A hypothetical question was then put to Dr. Potts as to the probable time in which the plaintiff would recover with proper treatment. The defendant's counsel interposed the objection that, "The doctor does not know the entire history of the case." The doctor made a personal examination of the plaintiff a short time previous to the trial and diagnosed her ailment as a combination of neurasthenia and hysteria and he simply gave his opinion as to the probable time it would require her to recover from that ailment. He heard the testimony as to the condition of the plaintiff's health subsequent to the acci-

dent. We do not think the second assignment of error should be sustained.

The third assignment must be overruled for the reasons given for dismissing the first assignment of error.

The refusal of the court to continue the cause under the circumstances was not an abuse of discretion amounting to reversible error. The testimony on both sides of the case, except that of Dr. Crothers, was concluded. It did not appear by proof that the doctor had been subpœnaed nor was any offer made to show what he would testify to. In addition to this his testimony would have been simply cumulative.

The parts of the charge assigned for error are not justly open to criticism. Especially is this true when we consider the affirmation by the court of the defendant's thirteenth, fourteenth, and fifteenth points for charge. The court's answers to the fourth and eleventh points are likewise unobjectionable, and are sufficiently full and explicit to vindicate themselves.

The assignments are overruled, and the judgment is affirmed.