## Cooper *v.* Metropolitan Life Insurance Company, Appellant.

296

Argued May 12, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Richard H. Klein,* with him *Harry Cole Bates,* for appellant.

*Samuel Gubin,* for appellee.

OPINION BY MR. JUSTICE LINN, June 26, 1936:

The assignments of error may be considered under two headings: (1) the physicians' opinions as to occupational incapacity; (2) the refusal of judgment n. o. v. The suit was on three insurance policies providing compensation for accident. The facts are stated in the report reversing the judgment entered after a former trial: 317 Pa. 405, 177 A. 43. We then said, "A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." As the jury had not been so instructed, another trial was necessary.

First. Three assignments complain of physicians' opinions received in evidence. (1) The question, the objection and the answer complained of, in the first, are as follows: "Now Doctor, could Henry I. Cooper, during this period of time, from the time he entered your Hospital until the time you turned him over to Dr. Gill and since Dr. Gill took charge of him and operated on him, he having been at your institution a number of times since then, could Henry I. Cooper perform any of the duties of any occupation which he formerly might have been reasonably capable of performing?" Defendant's Counsel: "This is objected to, if the Court please, for the reason it would require a knowledge of the duties he was reasonably capable of performing and a knowledge of the business." The Court: "We will make the same ruling and note an exception for the Defendant." "A. I would say no, again qualifying it by saying this: that if the occupations this man would be engaged in required

a useful knee, or required a knee free from pain or annoyance to him in any sort of way, he would be unable to conduct that work."

The doctor's explanation was continued in the next question and answer, not included in the assignment: "Q. So I may straighten it out in my own mind; your opinion today is that Mr. Cooper can do work which does not require the use of this leg; is that the idea? A. That would not require the use of the injured leg, provided the leg did not cause him any discomfort."

(2) The next assignment is to the refusal to sustain an objection to the following question: "Q. Now, Doctor, the testimony in this case is that Mr. Cooper quit grade school at the age of fourteen, reaching as he said about the seventh grade; that he went to work as a delivery boy in a grocery store where he worked two or three months delivering packages and that then he took a job driving a horse in a lumber yard which he held over two years; then went to railroading about the time he reached the age of seventeen years, working as a brakeman, that he went to North Dakota and fired on the Great Northern Railroad and came back to Sunbury about 1911 and went to firing on the railroad and was furloughed and then went on an ice wagon for his brother and delivered ice until that Fall and then went back to railroading as a brakeman and continued at that a year or a little more and then went to firing on the railroad for two years and then went into a grocery and fish store business for himself, it being largely a cash fish business. This continued about a year or a year and a half and he then started in the ice and coal business for himself and was in that for eight or nine years, his business being largely that of manager conducting this ice and coal business and during his continuing in that business this accident happened. With that in mind and your examinations of Mr. Cooper at different times and the treatments he has had, you may state whether or not Mr. Cooper, from the time you first met him up to

this time, was able to engage in any useful occupation for compensation or profit? By Mr. Klein: That is objected to, if the Court please, for the reason it does not state the relevant material facts in the testimony, and for the second reason that the Doctor is not offered here as an expert on employment but as an expert along medical lines. The question is objected to. By the court: What facts do you suggest the question didn't state? By Mr. Klein: If the Court please, I don't believe it is necessary for me to state the facts. By the court: We will overrule the objection and note an exception for the Defendant. By the witness: A. In view of the fact that this man has, from this history which was recited, always engaged in manual labor, that he apparently is not a skilled mechanic who can sit at a bench and make a living with his hands, that he has not had the schooling which would enable him to use his head without using his body, I would say this man, since I have known him, and at the present time is totally unable to make a living, or to engage in any useful occupation for compensation or profit. By Mr. Klein: If the Court please, that answer is objected to for the reason the Doctor has qualified it by matters which were not in the original question, and, therefore, the answer is not responsive to the question and has been so qualified by a different answer. By the court: Strike out the answer that he is unable to make a living and let the rest of the answer stand. Note an exception. By Mr. Klein: If the Court please, my objection was to the answer generally because of the qualifications put on the answer. I was not only objecting to his statement that he could not earn a living; I was objecting to the Doctor saying that this man could only do manual labor. That is for the Jury. By the court: It is for the Jury to take into consideration the evidence as adduced and if the opinion is based on facts not adduced it is worthless. That is for the Jury. We will overrule the objection and note an exception for the Defendant."

(3) The third is the admission of the answer to a question quite similar in character but addressed to another physician: "A. I would say no. I wish to qualify it in this way, that if his occupation in any way involved the use of his knee that it would have been impossible for him to continue with any kind of a job of work such as he performed from the time he was fourteen up to the present time. Even though he was not able to conduct his work on account of the condition of his knee, I think even though he might have been sitting in the office, if the knee was causing him pain as from my examination of this patient from time to time during the past few years it is evident he did suffer, I think that would greatly impair his usefulness and probably prevent him from being engaged in any—" He added the following: "A. I would say no, again qualifying it by saying this: that if the occupations this man would be engaged in required a useful knee, or required a knee free from pain or annoyance to him in any sort of way, he would be unable to conduct that work."

The jury had the plaintiff before them and heard from him about his education, prior employments, occupation at the time of the injury, the injury itself and the resulting incapacity and the treatment to the date of trial. It is common knowledge that there are many ailments which laymen might not consider wholly or even partially incapacitating, but for which a physician would immediately insist upon partial or total inactivity and rest. The evidence shows that mere description of the knee injury * would not sufficiently inform a lay jury

---

* Dr. Gill said plaintiff had synovitis. "Chronic synovitis is a part of arthritis. It is a term which means inflammation of the synovitic membrane. If it goes further and involves the ligaments and bones and cartilages then it is an arthritis. I don't think I could limit Mr. Cooper's condition to chronic synovitis. That is part of the picture but not all of it because there has always been tenderness of the ligaments. Q. You say that this synovitis, as you call it, would contribute to the difficulty he was having with his

to consider and determine intelligently the questions at issue. It therefore became necessary to enlighten the jury by the opinions of the physicians who had treated and operated on the plaintiff, or were otherwise qualified by experience and observation. Necessity is the ground of admissibility of such evidence. Whether a necessity exists, and whether the witness is qualified, are in the first instance to be determined by the trial judge. If he decides that it is necessary and that the witness is qualified, the questions on review are whether he has abused his power in so deciding (*Corbin v. Haws Refractories Co.*, 277 Pa. 126, 120 A. 811; *McCullough v. Holland Furnace Co.*, 293 Pa. 45, 141 A. 631; *Davis v. Southern Surety Co.*, 302 Pa. 21, 153 A. 119), and whether the opinion received was admissible. In this case the judge was of opinion that the necessity existed and that the evidence was admissible. In passing on admissibility the learned trial judge was necessarily exercising the same power pursuant to which he passed on the necessity for such evidence and the qualifications of the witnesses. We all agree that the record contains nothing that would justify this court in holding that the two physicians were not qualified to give their opinions or that the opinions given were not admissible. They would seem to have been peculiarly qualified by their professional treatment of the plaintiff to give opinions on the subject. Another observation may be made about two of the answers. Unless an objecting party is harmed by what he complains of, there is no ground for a new trial. As to (1) and (3) it is to be noted that the witnesses did not say (though this seems to be the basis of appellant's argument) that plaintiff could not "perform any of the duties of any occupation which he formerly might have

knee? A. Unquestionably. Q. How did that picture change from the time you first saw him up to the present time; does that remain? A. This condition is evidenced by the creaking in his knee joint which has gotten worse. It is more marked now than when I first saw him."

been reasonably capable of performing," they qualified their answers, as appears above, by saying what perhaps anybody might have said in such general form and which could not have harmed defendant in any view of the record. In *Palmer v. Warren St. Ry. Co.,* 206 Pa. 574, 56 A. 49, an action for personal injury, the court held that it was error to refuse to allow a physician to answer the following question: "How, if at all, would that [curvature of the spine] affect her ability to perform labor?" In *Gillman v. Media, etc., Ry. Co.,* 224 Pa. 267, 73 A. 342, a physician was allowed to state "the probable time in which the plaintiff would recover with proper treatment."

In dealing with the other two questions and answers (2) and (3) it must first be said that defendant's objection that the question "does not state the relevant material facts" went for naught, because, when the learned counsel for defendant was asked to supply the facts he thought were omitted, he preferred not to do so: *Gillman v. Media St. Ry.,* supra; *Albert v. P. R. T.,* 252 Pa. 527, 532, 97 A. 680. It was open to defendant on crossexamination, as those cases hold, to test the opinion of the witnesses on the basis of any additional facts that defendant desired covered: see also *Stemons v. Turner,* 274 Pa. 228, 235, 117 A. 922.

The other objection, though not very definitely stated at the trial and now applicable to only one answer, is now made the basis for contending that the examination "permitted the doctors to pass upon the ultimate question before the jury and to substitute their opinion for the conclusions of the jury, based upon all the testimony and the charge of the Court. Appellant's theory also is that these are subjects which do not require expert testimony but are matters upon which the jury are as well informed as the witnesses." Both contentions must be rejected. The court and the jury remained free to deal with this evidence like any other. They were not bound by the opinions of the witnesses, who were not called to

decide the ultimate fact. Their testimony, if believed, merely proved another fact—that in the light of their general experience and of their observation of plaintiff, they had reached the conclusions announced. Those were facts to be considered with the other evidence; they might be rejected in whole or in part; the weight to be given them was for the jury. Certain federal cases dealing with War Risk Insurance are said to support the proposition that expert witnesses may not give opinions on the ultimate issue to be decided by the jury. If we understand appellant, it must be said that such opinions are received constantly in this Commonwealth. For example, in many eminent domain cases, the only question is the amount of compensation payable for land taken and almost always the proof is by opinion evidence; where the ultimate issue is sanity or insanity, opinion evidence is frequently all there is; other examples are common. Though the distinction is not always observed, it is necessary not to confuse cases admitting opinion evidence with the cases holding that such evidence will not be received where there is no necessity for it, as where the cause of action is otherwise susceptible of proof. In *Auberle v. McKeesport,* 179 Pa. 321, 324, 36 A. 212, we said: "But where the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible." See generally, *Coyle v. Com.,* 104 Pa. 117, 131; *Com. v. Farrell,* 187 Pa. 408, 419, 41 A. 382; *Phila. v. Dobbins,* 24 Pa. Superior Ct. 136; *Graham v. Pennsylvania Co.,* 139 Pa. 149, 159, 21 A. 151; *Kuhn v. Ligonier V. R. R. Co.,* 255 Pa. 445, 450, 100 A. 142; *Com. v. Marshall,* 287 Pa. 512, 525, 135 A. 301; *Schuette v. Swank,* 265 Pa. 576, 583, 109 A. 531; *Wigmore, Evidence,* volume 1, section 673, volume 3, section 1920.

Second. No complaint of the charge is made, save that binding instructions were refused. We all agree

that the evidence was for the jury. As basis for the inference that plaintiff was not totally disabled, within the words of the policies, defendant put in evidence three applications for the years 1932, '33 and '34 for "operator's license in accordance with the provision of the Vehicle Code and its amendments" in which plaintiff answered "none" to the question: "Have you any mental or physical incapacity or infirmity." Plaintiff admitted the applications and his false answers. He received the licenses, but testified that he did not drive a car during 1932 or 1933; that in 1934 he drove his car from his home in Sunbury to a hospital in Danville where he received treatment, because it was necessary for him to do so "six or eight times." In the charge the learned trial judge referred to this evidence. The jury knew plaintiff's assertions in the applications were false if his testimony of the severity of his injury was true. If the jury had found against him by taking him at his word as recorded in the applications, he could have made no reasonable complaint about the verdict. But, in the circumstances shown, the effect of the evidence was for the jury. It still remained for the court, in disposing of the motion for a new trial, to consider whether plaintiff testified falsely in describing himself as "totally disabled," or falsely answered the questions on the application forms; the learned trial judge had the plaintiff under observation during the trial, heard the arguments of counsel to the jury, dealt with it in his charge, and was in much better position to determine the effect to be given to the matter in disposing of the motion, than an appellate court can be. If he had granted a new trial on the ground that he thought justice had not been done by the verdict, it is safe to say this court would not have disturbed his order; the application of the same rule—that in the absence of a showing of abuse of discretion such an order will not be disturbed—requires that the order refusing a new trial be affirmed.

Judgment affirmed.